**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**VIJAY SINHA and PHYLLIS DUBE**, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

**MAPFRE U.S.A. CORPORATION**,

Defendant.

Case No.:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs, Vijay Sinha and Phylis Dube, individually and on behalf of the Class defined below of similarly situated persons, allege the following against MAPFRE U.S.A. Corporation ("MAPFRE" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

## SUMMARY OF THE CASE

1. This case involves the Data Breach that Defendant announced on August 22, 2023, wherein—from July 1, 2023 to July 2, 2023—the personal identifying information ("PII") of hundreds of thousands of individuals was exposed due to a flaw in Defendant's online quoting system, which allowed hackers and other bad actors to obtain individuals' PII for unsavory and illegal purposes.

2. This Class Action Complaint is filed on behalf of all persons in the United States, described more fully in the following sections, whose PII was compromised in the Data Breach.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

4. This Court has jurisdiction over Defendant because Defendant is headquartered in Massachusetts and has thus availed itself of the rights and benefits of the Commonwealth of Massachusetts by engaging in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout the United States in this judicial district and abroad; (ii) conducting substantial business in this forum; (iii) having a registered agent to accept service of process in the Commonwealth of Massachusetts; and/or (iv) engaging in other persistent courses of conduct and/or deriving substantial revenue from services provided in Massachusetts and in this judicial District.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside within this District and have purposefully engaged in activities, including transacting business in this District and engaging in the acts and omissions alleged herein, in this District.

## PARTIES

### A. Plaintiff Vijay Sinha

6. Plaintiff Vijay Sinha is, and at all relevant times alleged herein was, an individual citizen of the State of Massachusetts.

7. On or about June 2022, Plaintiff Vijay got into a car accident, resulting in his car being totaled. At the time of the car accident, Plaintiff had a car insurance plan with GEICO.

8. After the car accident, Plaintiff paid for and obtained a rental vehicle while he waited for his totaled car to be fixed.

9. GEICO referred Plaintiff to Defendant MAPFRE insurance to reimburse Plaintiff for the cost of the rental car.

10. As a condition for reimbursing Plaintiff Vijay for his rental car, MAPFRE required Plaintiff to provide MAPFRE with private information, including, but not limited to: name, phone number, home address, and email address.

11. On October 19, 2023, Plaintiff received a data breach notification letter from MAPFRE that an "unknown party obtained access to your driver's license number through MAPFRE's Massachusetts online quoting platform. The unknown party may also have obtained access to information regarding vehicles you own, including make, model, year, and vehicle identification number."

12. Upon learning of the Data Breach, Plaintiff spent time planning how to protect his private information.

13. Plaintiff Vijay did not know that MAPFRE continued to retain his private information.

14. In addition to the damages detailed herein, the Data Breach has caused Plaintiff to be at substantial risk for further identity theft.

**B. Plaintiff Phyllis Dube**

15. Plaintiff Phyllis Dube is, and at all relevant times alleged herein, was an individual citizen of the State of Massachusetts.

16. During 2015, Plaintiff Dube was insured with MAPFRE for car insurance.

17. Plaintiff Dube is no longer insured under a MAPFRE car insurance plan.

18. On or about October 2023, Plaintiff received a data breach notification letter from MAPFRE that an "unknown party obtained access to your driver's license number through MAPFRE's Massachusetts online quoting platform. The unknown party may also have obtained access to information regarding vehicles you own, including make, model, year, and vehicle identification number."

19. Upon learning of the Data Breach, Plaintiff spent much time planning how to safeguard her private information.

20. Plaintiff Dube did not know that MAPFRE continued to retain her private information.

21. In addition to the damages detailed herein, the Data Breach has caused Plaintiff to be at substantial risk for further identity theft.

### C. Defendant MAPFRE U.S.A. Corporation

22. Defendant MAPFRE U.S.A. Corporation is incorporated in the State of Massachusetts, with its corporate office located at 211 Main Street, Webster, Massachusetts, 01570 in Worcester County.

23. Defendant is a major provider of insurance products to Americans, including car insurance.

## FACTUAL ALLEGATIONS

### A. Defendant's Data Collection Practices

24. Defendant collects actual and potential customers' private information, such as driver's license numbers, names, phone numbers, addresses, and vehicle information (e.g., make, model, year, and vehicle identification number), and other information.

25. Potential customer information includes, *inter alia*, name, birth date, email address, and phone number.

26. On Defendant's website is an online quoting platform, which anyone can use to obtain an estimate for a MAPFRE car insurance premium.

27. For a user of MAPFRE's website to obtain a quote, the user need only enter in the quoting platform any person's name, address, and date of birth.[1]

28. When the quote is generated, sensitive drivers' information about a person is divulged, such as the driver's license number, vehicle identification number, model, make, and year of the car belonging to the person. [2]

29. To improve the accuracy of its quotes, Defendant gathers driver's license and vehicle information from consumer credit bureaus.[3]

30. Defendant collects customers' information, which includes driver's license information.

31. In spite of the sensitivity of driver's license information, Defendant's customer information is shared with third parties via behavioral advertising. Defendant retains customer information for commercial operations and advertising purposes.[4]

**B. The Data Breach**

32. On August 22, 2023, Defendant uploaded the following data breach notification on the Massachusetts state government website:

---

[1] *Mapfre data breach impacts people who have never been customers: Ben Has Your Back*, WCVB 5, https://www.wcvb.com/article/massachusetts-mapfre-insurance-company-data-breach/45308656 (last visited Nov. 17, 2023).

[2] *Insurer Mapfre Faces Class Action Over Data Breach*, Insurance Journal, https://www.insurancejournal.com/news/east/2023/09/13/740102.htm (last visited Nov. 17, 2023).

[3] https://quote.MAPFREinsurance.com/#contactinfo ("To provide you the most accurate quote possible, we will obtain from third parties information such as your consumer credit, driving, claims and insurance histories.")

[4] https://www.MAPFREinsurance.com/getnoticecollection/?lang=EN

We are writing to inform you of an incident that involved your personal information and, possibly, information about your vehicle(s). Please read this letter carefully for information about the incident and to learn how you can take steps to help protect yourself against possible misuse of the information, including by means of services being offered through MAPFRE Insurance ("MAPFRE")* for your benefit.

**What Happened**

Between July 1 and July 2, 2023, an unknown party used information about you – which was already in the unknown party's possession – to obtain access to additional information about you through MAPFRE's Massachusetts online quoting platform in Massachusetts.

**What Information Was Involved**

We have determined that the unknown party obtained access to your driver's license number through MAPFRE's Massachusetts online quoting platform. The unknown party may also have obtained access to information regarding vehicles you own, including make, model, year, and vehicle identification number.

**What We Are Doing**

As soon as MAPFRE became aware of the issue, we took down our Massachusetts online quoting platform and conducted an investigation to determine what happened. We have implemented additional controls within our system to protect against a reoccurrence of the incident. In addition, MAPFRE has reported the unknown party's illegal activity to law enforcement.

**What You Can Do**

We encourage you to remain vigilant against incidents of identity theft and fraud, and to monitor your free credit reports for suspicious activity and to detect errors. Enclosed with this letter are some steps you can take to protect your information.

As a measure of added security and to help protect your identity, we are offering a complimentary 12-month Membership to Experian's® IdentityWorksSM. This product provides you with credit monitoring, identity theft resolution services, and $1,000,000 of identity theft insurance.

Please review the enclosed instructions to learn how to activate your Membership to Experian's® IdentityWorksSM.

We regret that this incident occurred and any concern it may cause you. If you have additional questions, please call our dedicated, toll-free call center at 833-318-2776, Monday through Friday between 9:00 a.m. and 11:00 p.m. and Saturday and

Sunday between 11:00 am and 8:00 pm Eastern Time, excluding major U.S. holidays.

Sincerely,

Steven Shiner
Senior Vice President, Operations
MAPFRE U.S.A. Corp.

33. Upon information and belief, the Data Breach involved the information of about 266,142 Massachusetts residents.[5]

34. By inputting into Defendant's online quoting system one's name, date of birth, and address, hackers were able to access delicate information, including names, driver's license numbers, car model, make, year, and vehicle identification numbers.[6] This information is specific enough to find any person's physical location at any public location the person decides to go, unless the person purchases or rents a new car.

## C. Defendant Failed to Comply with the FTC Act and Failed to Observe Reasonable and Adequate Date Security Measures

35. The FTC has issued several guides for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be considered for all business decision-making.[7]

36. Under the FTC's 2016 *Protecting Personal Information: Guide for Business* publication, the FTC notes that businesses should safeguard the personal customer information they retain; properly dispose of unnecessary personal information; encrypt information stored on

[5] https://www.mass.gov/doc/data-breach-report-2023/download
[6] *Mapfre data breach impacts people who have never been customers: Ben Has Your Back*, WCVB 5, https://www.wcvb.com/article/massachusetts-mapfre-insurance-company-data-breach/45308656 (last visited Nov. 17, 2023); *Insurer Mapfre Faces Class Actions Over Data Breach*, Insurance Journal, https://www.insurancejournal.com/news/east/2023/09/13/740102.htm (last visited Nov. 17, 2023).
[7] Federal Trade Commission, *Start With Security*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf

computer networks; understand their network's vulnerabilities; and implement policies to rectify security issues.[8]

37. The guidelines also suggest that businesses use an intrusion detection system to expose a breach as soon as it happens; monitor all incoming traffic for activity indicating someone is trying to hack the system; watch for large amounts of data being siphoned from the system; and have a response plan in the event of a breach.

38. The FTC advises companies to not keep information for periods of time longer than needed to authorize a transaction; restrict access to private information; mandate complex passwords to be used on networks; utilize industry-standard methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[9]

39. The FTC has brought enforcement actions against companies for failing to adequately and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders originating from these actions further elucidate the measures businesses must take to satisfy their data security obligations.

40. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

[8] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf
[9] FTC, *Start With Security*.

41. Plaintiffs and Class Members gave their private information to Defendant with the reasonable expectation and understanding that Defendant would comply with its duty to keep such information confidential and secure from unauthorized access.

42. Before and during the Data Breach, Defendant understood that its practices were not secure, yet gathered more private information than needed for business practices.

43. Defendant stated on its website conflicting terms and conditions that it would safeguard confidential information without guaranteeing security. "While we provide certain internet security technologies and use other reasonable precautions to protect confidential information and provide suitable security, we do not guarantee or warrant that information transmitted through the internet is secure, or that such transmissions will be free from delay, interruption, interception or error."[10]

44. Defendant has been on notice for years that Plaintiffs' and Class Members' private information was a target for bad actors because of, among other motives, the high value of the private information stored in Defendant's system. In fact, Defendant offers cyber insurance to assist businesses in responding to cyber incidents.[11] Despite such awareness, Defendant failed to impose and maintain reasonable and appropriate data security controls to protect Plaintiffs' and Class Members' private information from unauthorized access that Defendant should have anticipated and guarded against.

45. Defendant was fully aware of its obligation to protect the personal data of its customers and potential customers because of its storage of private information. Defendant was also aware of the significant consequences if it failed to do so because Defendant collected sensitive driver information from hundreds of thousands of customers and potential customers,

---

[10] https://www.MAPFREinsurance.com/terms-conditions/
[11] https://www.MAPFREinsurance.com/blog/why-your-business-needs-cyber-insurance/

and Defendant knew that this information, if hacked, would result in injury to consumers, including Plaintiffs and Class Members.

46. Defendant did not follow industry standard security or data minimization policies.

47. Despite understanding the consequences of insufficient data security, Defendants failed to adequately protect Plaintiffs' and Class Members' private information, permitting bad actors to access and misuse it.

**D. The Data Breach Caused Harm and Will Result in Additional Fraud**

48. Without detailed disclosure to Defendant's customers and potential customers, consumers of Defendant's services, including Plaintiffs and Class Members, were unknowingly and unwittingly exposed to continued misuse and ongoing risk of misuse of their private information for months without being able to take precautions to prevent imminent harm.

49. The ramifications of Defendant's failure to keep Plaintiffs' and Class Members' data secure are severe.

50. Consumer victims of data breaches are much more likely to become victim of identity fraud. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.[12]

51. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[13] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[14]

---

[12] *2014 LexisNexis True Cost of Fraud Study*, https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf, (last visited July 26, 2018).
[13] 17 C.F.R § 248.201 (2013).
[14] Id.

52. Identity thieves can use personal information, such as that of Plaintiffs and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

53. As a result of Defendant's delay between the data breach in July and the notice of the Data Breach sent to affected persons in July, the risk of fraud for Plaintiffs and Class Members has been driven even higher.

54. Javelin Strategy and Research reports that identity thieves have stolen $112 billion in the past six years.[15]

55. Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[16]

56. There may be a time lag between when harm occurs versus when it is discovered, and also between when private information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen

---

[15] *See* https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud-hits-inflection-point (last visited April 10, 2017).

[16] *Victims of Identity Theft*, 2014 (Sept. 2015) available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited April 10, 2017).

> data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[17]

57. Thus, Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

**E. Plaintiffs and Class Members Suffered Damages**

**a. Plaintiff Vijay Sinha**

**58.** Upon information and belief, after the Data Breach, an unknown person hacked Plaintiff Vijay's Comcast email account, which he used for over 20 years.

**59.** The unknown person was able to track to whom Plaintiff was sending emails and also from who Plaintiff was receiving emails. After discovering that his Comcast email account was compromised, Plaintiff created a new email account.

**60.** After the Data Breach, PayPal and Plaintiff's bank notified him of illegal activities being conducted on his bank and PayPal accounts.

**61.** Following the Data Breach, an unknown person attempted to and/or succeeded in opening a credit or debt card account using Plaintiff's private information. As a result, Plaintiff had to change his bank account number.

**62.** Following the Data Breach, Plaintiff noticed an increase in spam emails, text messages, and/or phone calls.

**63.** Upon information and belief, after the Data Breach, a consumer credit reporting agency notified Plaintiff that his private information was detected on the "dark web".

[17] GAO, Report to Congressional Requesters, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last visited April 10, 2017).

**64.** Upon information and belief, at least three credit bureaus have false adverse information on Plaintiff arising from the Data Breach. Plaintiff is in the process of correcting this false adverse information maintained by the credit bureaus.

**65.** Before the Data Breach, Plaintiff had a good credit history with Jordan's Furniture, a furniture business with stores across states in the New England area.

**66.** After the Data Breach, Jordan Furniture's financing arm, TD Ameritrade, an electronic trading platform, denied a line of credit to Plaintiff, despite Plaintiff's good credit history with Jordan's Furniture.

**67.** After denying Plaintiff a line of credit, TD Ameritrade sent a letter to Plaintiff apologizing for the denial, explaining that the denial was based off erroneous information about Plaintiff provided by a third party.

**68.** Plaintiff has spent over 20 hours responding to the consequences of the Data Breach, mainly from monitoring Plaintiff's accounts, speaking to law enforcement and Plaintiff's bank, disputing fraudulent charges, and freezing Plaintiff's credit.

**b. Plaintiff Phyllis Dube**

**69.** After the Data Breach, Plaintiff Dube has noticed a stark increase of spam messages and phone calls.

**70.** After the Data Breach, Plaintiff received mail from the State of Kentucky notifying her that her supposed claim for unemployment benefits was denied.

**71.** Plaintiff has never resided in nor has she ever made any claim for unemployment benefits in Kentucky.

**72.** Upon information and belief, following the Data Breach, Plaintiff was notified by a credit monitoring agency that her private information was detected on the "dark web".

**73.** Upon information and belief, after the Data Breach, Plaintiff received notifications from Bank of America that fraudulent bank accounts were opened under her name.

**74.** After the Data Breach, Experian, a consumer credit reporting agency, froze Plaintiff's credit. To date, her credit remains frozen.

**75.** Plaintiff has spent over 10 hours responding to the consequences of the Data Breach, mainly from monitoring her accounts, speaking to law enforcement and her bank, disputing fraudulent charges, and freezing her credit.

**c. The Nationwide Class**

**76.** The Data Breach was a direct and proximate result of Defendant's failure to properly safeguard and protect Plaintiffs' and Class Members' private information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Defendant's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' private information to protect against reasonably foreseeable threats to the security or integrity of such information.

**77.** Had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, Defendant would have prevented intrusion into its information storage and security systems and, ultimately, the theft of its customers' and potential customers' confidential private information.

**78.** As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Breach, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring

them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured.

**79.** Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs' and Class Members' private information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

**a.** theft of their personal and financial information;

b. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their driver's information and other personal information being placed in the hands of criminals and misused via the sale of Plaintiffs' and Class Members' information on the Internet's black market;

c. the untimely and inadequate notification of the Data Breach;

d. the improper disclosure of their private information;

e. loss of privacy;

f. ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

g. ascertainable losses in the form of deprivation of the value of their private information, for which there is a well-established national and international market; and,

h. the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

80. While Plaintiffs' and Class Members' private information have been stolen, Defendant continues to hold consumers' private information, including Plaintiffs' and Class Members'. Particularly because Defendant has demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiffs and Class Members have an undeniable interest in ensuring that their private information is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

## **CLASS ALLEGATIONS**

81. Plaintiffs bring this Action as a class action under Federal Rule of Civil Procedure 23 and seeks certification of the following nationwide Class ("Class"):

> All persons whose personal information was accessed, compromised, copied, stolen, and/or revealed as a result of the MAPFRE (and any of MAPFRE's affiliates) Data Breach.

82. Excluded from the Class are Defendant, its officers and directors, and Members of their immediate families or their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

83. Class certification of Plaintiffs' claims is appropriate because they can prove the elements of the claims on a class-wide basis utilizing the same evidence as would be used to prove those elements in separate actions alleging the same claims.

84. **Numerosity—Federal Rule of Civil Procedure 23(a)(1)**. The Members of the Class are so numerous that joinder of all Class Members would be impracticable. Upon information and belief, the Class numbers in the millions. Also, the Class is comprised of an easily ascertainable set of MAPFRE customers who were impacted by the Data Breach. The exact number of Class Members can be confirmed through discovery, which includes Defendant's records. The resolution of Plaintiffs' and Class Members' claims through a class action will behoove the Parties and this Court.

85. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. Common questions of fact and law exist as to all Members of the Class and predominate over questions affecting only individual Class Members. These common questions of law or fact, include, among other things:

- Whether Defendant's cybersecurity systems and/or protocols before and during the Data Breach complied with relevant data security laws and industry standards;
- Whether Defendant properly implemented its purported security measures to safeguard Plaintiffs' and Class Members' private information from unauthorized access, propagation, and misuse;
- Whether Defendant took reasonable measures to determine the extent of the Data Breach after it first discovered the same;
- Whether Defendant disclosed Plaintiffs' and Class Members' private information in contravention of the understanding that the information was being revealed in confidence and should be maintained;
- Whether Defendant willfully, recklessly, or negligently failed to maintain and execute reasonable procedures and security controls to preclude unauthorized access to Plaintiffs' and the Class Members' private information;
- Whether Defendant was unjustly enriched by its actions; and
- Whether Plaintiffs and Class Members are entitled to damages, injunctive relief, or other equitable relief, and the extent of such damages and relief.

86. Defendant engaged in a common course of conduct granting rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and other Members of the Class. Similar or identical common law violations, business practices, and injuries are involved.

87. **Typicality—Federal Rule of Civil Procedure 23(a)(3)**. Plaintiffs' claims are typical of the claims of the other Members of the Class because, *inter alia*, all Class Members were similarly injured and sustained similar monetary and economic injuries as a result of Defendant's misconduct described herein and were accordingly subject to the alleged Data Breach. Also, there are no defenses available to Defendant that are unique to Plaintiffs.

88. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class they seek to represent, they retained counsel competent and experienced in complex class action litigation, and he will prosecute this action earnestly. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

89. **Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**. Defendant acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate regarding the Class under Federal Rule of Civil Procedure 23(b)(2).

90. **Superiority—Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendant, making it

impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

91. Class certification is also appropriate under Rules 23(b)(1) and/or (b)(2) because:

- The prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications establishing conflicting standards of conduct for Defendant;

- The prosecution of separate actions by individual Class Members would create a risk of adjudication that would be dispositive of the interests of other Class Members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and

- Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief regarding the Members of the Class as a whole.

92. Class certification is also appropriate because this Court can designate specific claims or issues or class-wise treatment and may designate multiple subclasses under Federal Rule of Civil Procedure 23(c)(4).

93. No unusual difficulties are likely to be encountered in the management of this action as a class action.

## CLAIMS FOR RELIEF

### COUNT I – NEGLIGENCE
### (On behalf of Plaintiffs and the Class)

94. Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 93.

95. Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting Plaintiffs' and Class Members' information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things:

a. designing, maintaining, and testing Defendant's security protocols to ensure that the private information of Plaintiffs and the Nationwide Class in Defendant's possession was adequately secured and protected;

b. to use reasonable care in obtaining, maintaining, and securing private information in Defendant's possession;

c. to impose processes to aptly discover and prevent the improper access and misuse of the personal information of Plaintiffs and the Nationwide Class;

d. to adequately disclose that the personal information of Plaintiffs and the Nationwide Class within Defendant's possession might have been compromised, how it was compromised, and the types of data that were compromised and when.

96. A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Nationwide Class was reasonably foreseeable, particularly considering Defendant's insufficient security practices.

97. Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the personal information of Plaintiffs and the Nationwide Class, including basic encryption techniques freely available to Defendant.

98. Plaintiffs and the Nationwide Class had no ability to protect their personal

information that was in, and possibly remains in, Defendant's possession.

99. Defendant was in a position to protect against the harm suffered by Plaintiffs and the Nationwide Class as a result of the Data Breach.

100. Through its actions and/or omissions, Defendant unlawfully breached its duties to Plaintiffs and the prospective Class Members by

a. failing to design, maintain, and test its security protocols to ensure that Plaintiffs' and the prospective Class Members' private information was adequately secured; failing to use reasonable care in obtaining, maintaining, and securing private information in Defendant's possession;

b. failing to implement processes to rapidly discovery and preclude the improper access and misuse of personal information of Plaintiffs and the Nationwide Class; and

c. failing to adequately disclose that Plaintiffs' and the prospective Class Members' personal information might have been compromised, how it was compromised, and the types of data that were compromised and when.

101. But for Defendant's wrongful and negligent breach of duties owed to Plaintiffs and the Nationwide Class, their personal information would not have been compromised.

102. There is a close causal connection between Defendant's failure to implement security measures to protect the personal information of Plaintiffs and the Nationwide Class and the harm, or risk of imminent harm, suffered by Plaintiffs and the Nationwide Class. The personal information of Plaintiffs and the Nationwide Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such personal information by adopting, implementing, and maintaining appropriate security measures.

103. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect personal information. The FTC's publications and orders described above also form part of the basis of Defendant's duty in this regard.

104. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect personal information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of personal information they obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Nationwide Class.

105. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

106. Plaintiffs and the Nationwide Class are within the class of persons that the FTC Act was intended to protect.

107. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Nationwide Class.

108. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will suffer injury, including but not limited to:

a. actual identity theft;

b. the loss of the opportunity of how their personal information is used;

c. the compromise, publication, and/or theft of their personal information;

d. out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their personal information;

e. lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft;

f. costs associated with placing freezes on credit reports;

g. the continued risk to their personal information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the personal information of Plaintiffs and the Nationwide Class; and

h. future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the personal information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and the Nationwide Class.

109. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

110. Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will suffer the continued risks of exposure of their personal information, which remain in Defendant's possession and is

subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the personal information in its continued possession.

111. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class are entitled to and demand actual, consequential, and nominal damages.

**COUNT II – BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiffs and the Class)**

112. Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 93.

113. Through their course of conduct, Defendant, Plaintiffs, and Class Members entered into implied contracts for the provision of driver's insurance and/or other services, as well as implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' Private Information.

114. The valid and enforceable implied contracts to provide driver's insurance and/or other services that Plaintiffs and Class Members entered into with Defendant include the promise to protect non-public Private Information given to Defendant or that Defendant creates on its own from disclosure.

115. When Plaintiffs and Class Members provided their Private Information to Defendant in exchange for Defendant's services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

116. Defendant solicited and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

117. In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

118. Class Members who paid money to Defendant reasonably believed and expected that Defendant would use part of those funds to ensure adequate data security. Defendant failed to do so.

119. Under the implied contracts, Defendant promised and were obligated to: (a) provide driver's insurance or other services to Plaintiff and Class Members; and (b) protect Plaintiffs' and the Class Members' private information. In exchange, Plaintiff and Members of the Class agreed to pay money for these services, and to turn over their Private Information.

120. Both the provision of driver's insurance or other services and the protection of Plaintiffs' and Class Members' Private Information were material aspects of these implied contracts.

121. The implied contracts for the provision of driver's insurance or other services – contracts that include the contractual obligations to maintain the privacy of Plaintiffs' and Class Members' Private Information—are also acknowledged, memorialized, and embodied in multiple documents, including (among other documents) Defendant's Privacy Notice.

122. Defendant's express representations, including, but not limited to the express representations found in its Privacy Notice, memorializes and embodies the implied contractual obligation requiring Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' Private Information.

123. Defendant's consumers value their privacy, the privacy of their dependents, and the ability to keep their Private Information associated with obtaining driver's insurance private.

To customers such as Plaintiffs and Class Members, driver's insurance or other services that do not adhere to industry standard data security protocols to protect Private Information are fundamentally less useful and less valuable than services that adhere to industry-standard data security. Plaintiffs and Class Members would not have entrusted their Private Information to Defendant and entered into these implied contracts with Defendant without an understanding that their Private Information would be safeguarded and protected or entrusted their Private Information to Defendant in the absence of its implied promise to adopt reasonable data security measures.

124. A meeting of the minds occurred, as Plaintiffs and Members of the Class agreed to and did provide their Private Information to Defendant, and paid for the provided driver's insurance or other services in exchange for, amongst other things, both the provision of driver's insurance or other services and the protection of their Private Information.

125. Plaintiffs and Class Members performed their obligations under the contract when they paid for their driver's insurance or other services and provided their Private Information.

126. Defendant materially breached its contractual obligation to protect the non-public Private Information Defendant gathered when the sensitive information was accessed by unauthorized personnel as part of the Cyber-Attack and Data Breach.

127. Defendant materially breached the terms of the implied contracts, including, but not limited to, the terms stated in the relevant Privacy Notice. Defendant did not maintain the privacy of Plaintiffs' and Class Members' Private Information as evidenced by its notifications of the Data Breach to Plaintiffs and at least 200,000 Class Members. Specifically, Defendant did not comply with industry standards, standards of conduct embodied in statutes like Section 5 of

the FTCA, or otherwise protect Plaintiffs' and the Class Members' Private Information, as set forth above.

128. The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

129. As a result of Defendant's failure to fulfill the data security protections promised in these contracts, Plaintiffs and Members of the Class did not receive the full benefit of the bargain, and instead received driver's insurance or other services that were of a diminished value to that described in the contracts. Plaintiffs and Class Members therefore were damaged in an amount at least equal to the difference in the value of the driver's insurance with data security protection they paid for and the driver's insurance services they received.

130. Had Defendant disclosed that it did not adhere to industry-standard security measures, neither the Plaintiffs, the Class Members, nor any reasonable person would have purchased driver's insurance or other services from Defendant.

131. As a direct and proximate result of the Data Breach, Plaintiffs and Class Members have been harmed and have suffered, and will continue to suffer, actual damages and injuries, including without limitation the release and disclosure of their Private Information, the loss of control of their Private Information, the imminent risk of suffering additional damages in the future, disruption of their driver's insurance or other services, out-of-pocket expenses, and the loss of the benefit of the bargain they had struck with Defendant.

132. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

133. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *e.g.*, (i) strengthen its data security systems and monitoring procedures; (ii) submit

to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit and identity monitoring to all Class Members.

**COUNT III – UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Class)**

134. Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 93.

135. Plaintiffs and Class Members conferred a monetary benefit on Defendant. Specifically, they provided their private information to Defendant in exchange for Defendant's goods and services that were the subject of the transaction and have their Private Information protected with adequate data security.

136. Defendant knew that Plaintiffs and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiffs and Class Members for business purposes.

137. The amount Plaintiffs and Class Members paid for goods and services were used, in part, to pay for use of Defendant's network and the administrative costs of data management and security.

138. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

139. Defendant failed to secure Plaintiffs' and Class Members' Private Information and, therefore, did not provide full compensation for the benefit Plaintiffs and Class Members provided.

140. Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

141. If Plaintiffs and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to Defendant's services.

142. Plaintiffs and Class Members have no adequate remedy at law.

143. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity of how their Private Information is used; (c) the compromise, publication, and/or theft of their Private Information; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

144. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

145. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiffs and Class Members overpaid for Defendant's services.

**COUNT IV – BREACH OF FIDUCIARY DUTY**
**(On behalf of Plaintiffs and the Class)**

146. Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 93.

147. A relationship existed between Plaintiffs and the Class Members and Defendant in which Plaintiffs and Class Members entrusted Defendant to protect Plaintiffs' and Class Members' private information, and Defendant accepted that trust.

148. Defendant owed, and owes, a fiduciary duty to Plaintiffs and the Class to keep Plaintiffs' and Class Members' private information confidential.

149. Plaintiffs and Class Members acted in reasonable reliance upon Defendant's express and/or implied promises that it would keep their private information secure in compliance with data security industry standards and those required by Section 5 of the FTC Act.

150. Defendant breached its fiduciary duty to Plaintiffs and the Class by failing to protect Plaintiffs' and the other Class Members' private information from access by unauthorized third parties.

151. As a result of Defendant's breach of its fiduciary duty of confidentiality and the disclosure of Plaintiffs' and Class Members' private information, Plaintiffs and Class Members have suffered and will continue to suffer damages, including, but not limited to:

a. the untimely and/or inadequate notification of the Data Breach;

b. improper disclosure of Plaintiffs' and Class Members' private information;

c. loss of privacy;

d. out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach;

e. the value of their time spent mitigating identity theft and/or identity fraud;

f. the increased risk of identity theft and/or identity fraud; and

g. emotional distress.

152. But for Defendant's breach of fiduciary duty, the damage to Plaintiffs and Class Members would not have occurred.

153. Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiffs and Class Members.

154. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiffs and Class Members are entitled to and demand actual, consequential, and nominal damages and injunctive relief.

**COUNT V – VIOLATION OF DRIVERS' PRIVACY PROTECTION ACT**
**(On behalf of Plaintiffs and the Class)**

155. Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 93.

156. Under the DPPA, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains." 18 U.S.C. § 2724.

157. Defendant collects from consumer credit bureaus, customers, and potential customers names, phone numbers, addresses, and driver's license numbers of customers and potential customers, including the personal information of Plaintiffs and Class Members.

158. Defendant knowingly used and/or disclosed customers' and potential customers' personal information from a motor vehicle record when it allowed unauthorized third parties to access addresses, driver's license numbers, and vehicle identification numbers of Plaintiffs and Class Members via Defendant's website's online quoting system.

159. Defendant's knowing use and/or disclosure of Plaintiffs' and Class Members' personal information to unauthorized third parties via Defendant's online quoting system constitute disclosure and/or use not permitted under the DPPA.

160. Due to Defendant's violations of the DPPA, Plaintiffs and Class Members are entitled to actual damages, liquated damages, punitive damages, attorneys' fees and costs.

**COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(On behalf of Plaintiffs and the Class)**

161. Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 93.

162. Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting Plaintiffs' and Class Members' information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

163. A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Nationwide Class was reasonably foreseeable, particularly considering Defendant's insufficient security practices.

164. Defendant's own conduct created a foreseeable risk of harm to Plaintiffs and the Nationwide Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the

personal information of Plaintiffs and the Nationwide Class, including basic encryption techniques freely available to Defendant.

165. Plaintiffs and the Nationwide Class had no ability to protect their personal information that was in, and possibly remains in, Defendant's possession.

166. Defendant was in a position to protect against the harm suffered by Plaintiffs and the Nationwide Class as a result of the Data Breach.

167. Through its actions and/or omissions, Defendant unlawfully breached its duties to Plaintiffs and the prospective Class Members by

d. failing to design, maintain, and test its security protocols to ensure that Plaintiffs' and the prospective Class Members' private information was adequately secured; failing to use reasonable care in obtaining, maintaining, and securing private information in Defendant's possession;

e. failing to implement processes to rapidly discovery and preclude the improper access and misuse of personal information of Plaintiffs and the Nationwide Class; and

f. failing to adequately disclose that Plaintiffs' and the prospective Class Members' personal information might have been compromised, how it was compromised, and the types of data that were compromised and when.

168. Plaintiffs and Class Members suffered emotional distress as a result of Defendant's negligent failure to protect their private information.

169. From the Data Breach, Plaintiffs and Class Members have suffered and will continue to suffer frustration and stress from, *inter alia*:

a. dedicating much time in monitoring their accounts for fraudulent activity;

b. speaking to law enforcement and banks; and

c. disputing fraudulent charges.

170. Plaintiffs and Class Members suffered physical harm as a result of Defendant's negligent failure to protect their private information.

171. As a result of the stress caused by having to deal with the consequences of the Data Breach, Plaintiffs and Class Members suffered and continue to suffer 'brain fogs'. Brain fogs are periods of "confusion, forgetfulness, and a lack of focus and mental clarity."[18] Brain fogs can be caused by, among other things, stress.[19]

172. A reasonable person would have suffered emotional distress under the circumstances surrounding this case.

**COUNT VII – DECLARATORY JUDGMENT**
**(On behalf of Plaintiffs and the Class)**

173. Plaintiffs and the Class re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 93.

174. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court may enter a judgment declaring the rights and legal relations of the Parties and grant further necessary relief. The Court also has broad authority to restrict acts that are tortious and violate the terms of regulations described in this Complaint.

175. There is an actual, substantial controversy concerning Defendant's present and prospective obligations to reasonably protect users' private information and whether Defendant is upholding cybersecurity measures sufficient to protect the Class, including Plaintiffs, from future security breaches that risk Plaintiffs' and Class Member's information.

---

[18] *Brain Fog: Solutions To Help You Improve Concentration*, Bangkok Hospital, https://www.bangkokhospital.com/en/content/brain-fog-syndrome (last visited Nov. 27, 2023).
[19] *Id.*

176. Plaintiffs aver that MAPFRE's cybersecurity measures are insufficient. Also, Plaintiffs and Class Members still suffer injury from the Data Breach and stay at imminent risk that future breaches of their private information and ongoing fraud against them will happen.

177. Plaintiffs petition the Court to enter a judgment declaring the following: (i) Defendant owes a duty to protect consumers' private information and to timely notify them of a data breach under common law, the DPPA, and Section 5 of the FTC Act; and (ii) Defendant is in in violation of these legal duties by failing to impose reasonable measures to protect consumers' private information in its possession and control.

178. Plaintiffs ask the Court to issue injunctive relief mandating Defendant to use appropriate security controls consistent with law and industry standards to safeguard consumers' private information from future data breaches.

179. If an injunction is not issued, the Class Members will suffer irreparable injury and lack a sufficient legal remedy, should another data breach at MAPFRE occur. The risk of another breach is real, immediate and substantial. If another breach at MAPFRE happens, the Class Members will not have an adequate legal remedy because several of the corresponding injuries are not readily quantified and Class Members will be compelled to bring several lawsuits to correct the same misconduct.

180. The hardship to Class Members if an injunction is not granted exceeds the hardship to Defendant if an injunction is granted. If a similar security breach happens again from Defendant's repeated misconduct, Class Members likely will be subjected to substantial hacking attempts and other damage. The cost to Defendant of complying with an injunction by imposing reasonable cybersecurity standards is minimal, and Defendant has pre-existing legal duties to impose such measures.

181. Issuance of the petitioned injunction will not harm the public interest, Rather, such an injunction would behoove the public by precluding further data breaches at MAPFRE, thereby eliminating the additional injuries that would result to the Class Members and the millions of consumers whose private information would be further at risk.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above, seeks the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Nationwide Class requested herein;

b. Judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

DATED: December 4, 2023

Respectfully submitted,

*/s/ Luke MItcheson, Esq.*
Luke Mitcheson, Esq.
MORGAN AND MORGAN PA
101 Station Landing, Suite 230
Medford, MA 02155
(857) 383-4905
lmitcheson@forthepeople.com